WALTER J. ROTHSCHILD, Judge.
|j>On December 22, 2004, the Jefferson Parish District Attorney filed a bill of information charging defendant, Cedrick C. Robinson, with distribution of cocaine within 1000 feet of a church in violation of LSA-R.S. 40:981.3.[1] Defendant pled not guilty at arraignment. Defendant proceeded to trial on August 16, 2005, and on the following day a 12-person jury *1208 unanimously found him guilty of distribution of cocaine within 1000 feet of a religious building property.[2] On May 15, 2008, defendant was sentenced to 30 years imprisonment at hard labor, with two years being without parole, probation, or suspension of sentence. The trial court also imposed a $50,000 fine.
Also on May 15, 2008, the State filed a multiple offender bill of information, alleging defendant was a second felony offender. Defendant admitted the ^allegations in the multiple bill, his original sentence was vacated, and he was sentenced as a second felony offender to 30 years imprisonment at hard labor. On August 27, 2008, defendant filed an application for post-conviction relief, and on September 16, 2008, defendant was granted an out-of-time appeal.
The testimony and evidence in the record reveals the following:
On April 1, 2004, Agent Joshua Bell was working in an undercover capacity for Jefferson Parish Sheriffs Office Narcotics Division. He was in an unmarked vehicle equipped with surveillance equipment, was given funds, and was instructed by Agent Lisa Thornton to go to the area of 36th and Estalote in Harvey to purchase narcotics.
Agent Bell went to the corner of 36th and Estalote, passed the convenience store, drove around the block, and then approached the store again. He asked some black males if they knew where he could “get a twenty”[3] and they ignored him. Then, defendant came on his bicycle, and Agent Bell asked him if he knew where he could “get a twenty” and defendant responded yes. Agent Bell purchased narcotics from defendant. He believed the off-white, rock-like objects were consistent with crack cocaine. These objects later tested positive for cocaine.
Agent Bell gave the narcotics and the videotape of the transaction to Agent Lisa Thornton.[4] About five days later, Sergeant Joe Williams viewed the tape and recognized that defendant was the seller. Agent Thornton compiled a photographic lineup, and Agent Bell positively identified defendant.
According to Agent Bell, the transaction was conducted about 25 to 30 feet from the store, and a “short block” from a church, a drug-free zone area. Agent Thornton explained that around the corner from the transaction, at 36th and Pallet, there was a church. The church, Second Pleasant Grove Church, was ^approximately 506 feet from where the transaction took place. Agent Thornton testified that the church is and was on April 1, 2004, a posted drug-free zone. Agent Thornton testified that the church was clearly closer than 1000 feet from the transaction.
In his sole assignment of error on appeal, defendant argues that the trial court erred in denying his motion to quash sentencing after being imprisoned more than 15 months before his original sentence was imposed. He argues that even considering the natural disaster that occurred in August of 2005, the delay was unreasonable and could not be attributed to his or his *1209 counsel’s actions. He further argues that he was prejudiced by the delay because he did not know what his sentence would be.
The State responds that because defendant pled guilty to the multiple bill he cannot seek review of a sentence imposed in conformity with the plea agreement. The State also contends that the sentencing delay was not unreasonable and was due to the effects of Hurricane Katrina and its aftermath. Further, the State argues that defendant cannot claim prejudice from the delay because defendant knew prior to trial, when he was offered the 20-year sentence plea bargain, that the State would multiple bill him if convicted. Finally, the State notes that defendant received credit for time served for his 30-year sentence, and that the passage of 15 months did not prejudice him.
On August 17, 2005, defendant was convicted and the trial court set sentencing for September 1, 2005. The record indicates that on January 10, 2007, the State filed a writ of habeas corpus and prose-quendum for defendant to be brought back for sentencing, and he was brought on February 13, 2007. On this day, the trial court denied defendant’s motion to quash sentencing and granted a stay for him to seek writs.
| .^Sentencing was continued on February 29, 2008, and re-set for April 9, 2008, and then continued from that date and re-set for May 13, 2008. Both continuances were requested by the trial court. On May 13, 2008, defendant requested that sentencing be continued, and it was re-set for the following day. On May 14, 2008, defendant filed a motion to re-urge his motion to quash sentencing and made an oral motion to reconsider his motion to re-urge. The trial court denied these motions, continued sentencing, and re-set sentencing for the following day.
On May 15, 2008, defendant orally moved for a stay of the proceedings, the trial court denied the stay, and defendant was sentenced. Also on May 15, 2008, defendant filed a notice of intent to apply for writs from the May 14, 2008 ruling denying his motion to quash sentencing. However, the record fails to indicate that a writ application was filed by defendant.
By this appeal, we now consider the issue raised by defendant regarding the sentencing delay in this case. LSA-C.Cr.P. art. 874 provides that a “[sjentence shall be imposed without unreasonable delay. If a defendant claims that the sentence has been unreasonably delayed, he may invoke the supervisory jurisdiction of the appellate court.”[5] The statutory right to the imposition of a sentence without an unreasonable delay is not governed by a constitutional right to a speedy trial. See State v. Johnson, 363 So.2d 458, 461 (La.1978). Principles of due process prohibit inordinate delays in post-conviction imposition of sentence when the delay causes prejudice to the defendant. State v. Duncan, 396 So.2d 297, 299 (La.1981). The sanction for unreasonable delay in sentencing is divestiture of the trial court’s sentencing jurisdiction. City of Baton Rouge v. Bourgeois, 380 So.2d 63, 64 (La.1980) (per curiam). An “unreasonable delay” is determined on a case-by-case basis. Id.
In State v. Watkins, 07-0789 (La.App. 4 Cir. 11/21/07), 972 So.2d 381, the Fourth Circuit held that a 21-month delay between conviction and sentencing, due to damage upon a city’s criminal justice sys *1210 tem caused by a catastrophic hurricane, did not violate the defendant’s right to be sentenced without unreasonable delay. In Watkins, the defendant was convicted of distribution of cocaine, and sentencing was re-set for September 2, 2005. Id., 07-0789 at 1, 972 So.2d at 382. However, on August 29, 2005, Hurricane Katrina struck the city of New Orleans. Id. The defendant was later sentenced on March 23, 2007. Id., 07-0789 at 2, 972 So.2d at 382.
In his appeal from this sentence, Watkins argued that the trial court violated his right to be sentenced within a reasonable time by the 21-month delay in sentencing him after his June 14, 2005 conviction, and that he was therefore entitled to have his conviction and sentence reversed. Id., 07-0789 at 3, 972 So.2d at 383. The appellate court recognized that “the damage visited upon the city’s criminal justice system by Hurricane Katrina was a special circumstance.” Id., 07-0789 at 9, 972 So.2d at 386. Watkins was sentenced 21 months after his conviction, and 19 months after Hurricane Katrina struck. Id. The Watkins court noted that the defendant apparently remained in custody from the time of his conviction until his sentencing, received credit for that time served, and did not point to any prejudice he suffered as a result of the delay in the imposition of his sentence. Id. The Fourth Circuit concluded that considering these facts and circumstances, the delay in imposing the sentence upon Watkins was not unreasonable and that even assuming the delay was unreasonable, Watkins was not 17prejudiced and, therefore, was not entitled to have his conviction and sentence vacated. Id.
Based on Watkins, supra, and due to Hurricane Katrina and its aftermath, the delay in imposing defendant’s original sentence does not violate the defendant’s right to be sentenced without unreasonable delay. Nonetheless, even assuming the delay was unreasonable, we fail to find that defendant was prejudiced. The record shows that defendant remained in custody from the time of his conviction until his sentencing, and received credit for time served. Defendant does not point to any prejudice he suffered as a result of the delay in sentencing, except for arguing that he did not know what his sentence would be and provides that the minimum sentence he could receive for the conviction was two years. However, the record reflects that defendant was offered a plea agreement the day before he proceeded to trial. The trial judge explained to defendant that it was his understanding that he had three prior convictions, that this would be his fourth, and that the State was going to file a multiple bill alleging him to be a fourth felony offender if he was convicted. The trial court told defendant that he would face a sentencing range of 45 years to life, and that unless something “leads” him differently, that he was inclined to impose 45 years. The State offered defendant to plead to distribution of cocaine and that it would file a “triple bill” instead, where he would face a sentencing range of 20 to 60 years, and would be sentenced to 20 years. As such, in light of defendant’s knowledge that the least amount of time he would serve under the plea agreement was 20 years as well as the credit he received for the time served, we fail to find that defendant suffered prejudice from the sentencing delay.
For the reasons stated herein, we find no merit in defendant’s assignment of error regarding the delay in sentencing.
The record was also reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matter was discovered:
*1211 The transcript reflects that defendant admitted that he was a second felony offender and was sentenced as such. The commitment reflects that defendant was “sentenced under Multiple Bill statute 15:529.1,” but does not reflect that defendant was sentenced as a second felony offender. Based on this discrepancy, we remand this matter to the trial court for the limited purpose of correcting the commitment to state defendant was sentenced as a second felony offender. See State v. Scott, 08-703 (La.App. 5 Cir. 1/27/09), 8 So.3d 658; State v. Dufrene, 07-823, p. 5 (La.App. 5 Cir. 2/19/08), 980 So.2d 31, 34.
Further, we direct the district court to make the entries in the minutes reflecting these changes and direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which the defendant has been sentenced. See LSA-C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).
For the reasons stated herein, the conviction and sentence of defendant, Cedric C. Robinson are hereby affirmed. The case is remanded to the trial court for the limited purpose of correcting the commitment as more fully discussed in this opinion.

CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED FOR LIMITED PURPOSE.

. On April 12, 2005, the bill of information was amended to include that defendant was also known as Cedric Lee Robinson.

. It is noted that the August 16, 2005 and the August 17, 2005 minute entries reflect that defendant proceeded to trial for the charge of DIST. CDS W/IN AREA SCHOOL, CHURCH, PLAY, ETC.” in violation of LSA-R.S. 40:981.3. The minute entries do not provide the specific controlled substance involved in this matter.

. Agent Bell explained that in this case this was slang for $20 of crack cocaine,

. The videotape of the transaction was played for the jury.

. Comment (d) to article 874 provides the following: "[t]o avoid clogging the supreme court docket with frivolous appeals on claims of unreasonable delay between conviction and sentence, this article provides for discretionary supervisory writs, rather than a right of appeal.”